UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DYANDRIA MURRAY,

Plaintiff,

-against-

ADMINISTRATION FOR CHILDREN'S SERVICES, et al.,

Defendant.

05 Civ. 0359 (RJH)

**MEMORANDUM OPINION AND ORDER**

Pro se plaintiff Dyandria Murray brings this action against the New York City Administration for Children's Services ("ACS"), the New York City Police Department ("NYPD"), ACS caseworker Lucile Blunt, NYPD Detective Angelo Paccione, foster care agency Forestdale, Inc., Forestdale employee Pascal Jean-Noel, and various unnamed defendants. Pursuant to 42 U.S.C. § 1983 and state law, plaintiff seeks damages and equitable remedies for false arrest and imprisonment, malicious prosecution, and interference with parental rights. The City defendants and Forestdale defendants have moved separately for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons set forth below, the Court grants defendants' motions [20, 30].

## BACKGROUND

When considering a motion for judgment on the pleadings, district courts should not stray beyond "facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference." *Kramer v. Time Warner Inc.*,

937 F.2d 767, 773 (2d Cir. 1991). However, where factual background is provided as "illustrative reference," and not thereafter relied upon as a "ground for decision," reviewing courts are free to look outside the complaint. *Id.* This Court will do so in order to provide some context.

This lawsuit is plaintiff's latest attempt to punish the City and others for their participation in the family court case in which she lost custody of her daughter. Plaintiff's saga began in April of 1995 when her husband moved out permanently and filed for divorce.[1] (*In re Dyandria D.*, No. 02389/97, at 3 (N.Y. Fam. Ct. July 30, 1998) (Sosa-Lintner, J.) (Def. City Ex. A).) During the course of a bitter dispute over paternal visitation rights, plaintiff's husband reported to authorities that he suspected plaintiff was neglecting their daughter. (*Id.* at 4.) Plaintiff responded by sending a letter to the State Central Registry alleging that her husband had threatened to kill the child and had "physically attacked" the child in the past, and she filed a complaint with the NYPD. (*Id.*) She also took her daughter to Bellevue Hospital to be evaluated, allegedly to deal with the stress of the parental separation. (*Id.*) During this appointment, plaintiff said that her daughter had no history of sexual abuse. (*Id.*) At the child's next appointment, however, the child told doctors that her father had touched her genital area before he moved out, and plaintiff revealed that the child had complained to her nearly two years earlier about ongoing sexual abuse. (*Id.* at 5.)

ACS initiated an investigation of all of these allegations. (*Id.* at 1.) In response, plaintiff filed a complaint in the Southern District of New York on October 19, 1998,

[1] The New York Supreme Court granted plaintiff's husband an annulment on August 5, 1998. (*See Murray v. Murray*, No. 24960/96 (N.Y. Sup. Ct. Aug. 5, 1998) (Satterfield, J.) (City Mot. to Dismiss ("City Mot."), Ex. B).)

naming ACS, caseworkers, employees of the Legal Aid Society, and the family court judge as defendants, alleging injuries "stemming from the seizure of her daughter by officials of [ACS] and from the subsequent commencement of child protective custody proceedings currently pending in New York Family Court." *Murray v. Admin. for Children's Servs.*, No. 98 Civ. 7356 (JSR), 1999 U.S. Dist. LEXIS 689, 1999 WL 33869, at *1 (S.D.N.Y. Jan. 25, 1999). The district court dismissed the case "on the ground that each of plaintiff's claims was either subject to abstention under *Younger v. Harris*, 401 U.S. 37 (1971), outside the subject matter jurisdiction of this Court, or inadequately pled even by the liberal standards applicable to pro se pleadings." *Murray v. Admin. for Children's Servs.*, No. 98 Civ. 7356 (JSR), 1999 U.S. Dist. LEXIS 7894, 1999 WL 329716, at *1 (S.D.N.Y. May 24, 1999).

Meanwhile, the Family Court was engaged in fact-finding, at the conclusion of which the court held that the allegations of sexual abuse had not be proved by a preponderance of the evidence, but that ACS had proved that plaintiff had neglected her daughter and that plaintiff's alcohol abuse placed her daughter "in imminent danger."[2] (*Id.* at 11, 14–15, 17.) The court also found that plaintiff's husband had neglected the child by failing to protect her from the active neglect of her mother. (*Id.* at 17.) On

[2] Plaintiff appealed this decision to the New York Appellate Division, which affirmed the findings and decision of the Family Court. *In the Matter of Dyandria D.*, 757 N.Y.S.2d 12 (App. Div. 2003), *reconsideration denied*, 2003 N.Y. App. Div. LEXIS 8132 (App. Div. July 10, 2003), *reconsideration denied*, 2003 N.Y. App. Div. LEXIS 10393 (App. Div. Oct. 2, 2003) (affirming Family Court decision that plaintiff "neglected the subject child emotionally, by socially isolating her, educationally, by failing to provide adequate education according to Education Law, article 65, and mentally, by creating a paranoid scenario of sexual abuse"). Plaintiff appealed the Appellate Division's decision to the New York Court of Appeals, which denied leave to appeal, *In the Matter of Dyandria D.*, 808 N.E.2d 1280 (N.Y. 2004), and to the United States Supreme Court, which denied certiorari, *Dyandria M. v. Admin. for Children's Servs.*, 543 U.S. 826 (2004).

December 13, 1999, following a dispositional hearing and permanency hearing, the Family Court extended the order for foster-care placement until December 13, 2000. (Amend. Compl. ¶ 2.; *see also In re Dyandria D.*, No.02389/97 (N.Y. Fam. Ct. Dec. 13, 1999) (Sosa-Lintner, J.) (Opp'n Ex. 2).) A few months later, the Family Court also entered an order of protection against plaintiff, prohibiting her from interfering with ACS's custody of plaintiff's daughter or harassing her ex-husband. (City Mot. Ex. G.)

On December 11, 2000, two days before the foster-care placement order was to expire, plaintiff informed ACS caseworker Lucile Blunt and Forestdale employee Pascal Jean-Noel that she would "resume custody" of her daughter on December 13, 2000, when the existing order of placement expired. (Amend. Compl. ¶¶ 6–9.) However, on December 12, 2000, the Family Court entered a temporary extension of the placement order to January 17, 2001. (*See In re Dyandria D.*, No. 02389/97 (N.Y. Fam. Ct. Dec. 12, 2000) (Larabee, J.) (Def. City Ex. G).) It is unclear from the facts provided whether plaintiff knew at the time that ACS had obtained a temporary extension of the placement order.[3] In any event, on December 18, 2000, plaintiff took her daughter out of foster care in violation of the family court order.[4] (Amend. Compl. ¶ 16.) Plaintiff then called her

---

[3] Plaintiff argues that this temporary order was obtained "secretly" and in violation of New York Family Court Act § 756-a(a), which states that a petition for extension of placement "shall be filed at least sixty days prior to the expiration of the period of placement, except for good cause shown." (Opp'n ¶ 9.) This same section of the Family Court Act also provides, however, that "the court may, on its own motion or at the request of the petitioner or respondent, enter one or more temporary orders extending a period of placement not to exceed thirty days upon satisfactory proof showing probable cause for continuing such placement." N.Y. Fam. Ct. Act § 756-a(e).

[4] Plaintiff has provided the Court with a copy of a *Village Voice* article regarding her family court case, which reports that plaintiff "picked up her daughter from her Queen school and drove her to Manhattan. . . . [A]ccording to court records, [plaintiff] disguised her daughter and the two stayed with friends to evade detection." Kristen Lombardi, Her Right to Be Obnoxious, *The Village Voice*, Apr. 12–18, 2006, at 26 (Opp'n Ex. 13.).

daughter's foster-care mother, who informed plaintiff that she had already called the police. (Amend. Compl. ¶¶ 17–18.) Plaintiff also alleges that Jean-Noel and Blunt reported plaintiff's actions to the police. (Amend. Compl. ¶¶ 20–23.) On December 20, 2000, the Family Court issued a warrant for plaintiff's arrest. (Amend. Compl. ¶¶ 23–24; City Mot. Ex. H.) On January 17, 2001, with plaintiff and her daughter still missing, the Family Court once again entered a temporary extension of the placement order to February 20, 2001. (Def. Forestdale Ex. C.)

Finally, on January 23, 2001, defendant Detective Paccione arrested plaintiff and returned plaintiff's daughter to foster care. (Amend. Compl. ¶ 26.) Plaintiff claims that she was held on these charges until February 2, 2001.[5] (Compl. ¶ 4.) Plaintiff also claims that following her arrest she was held in prison ten days. On February 20, 2001, the Family Court once again extended the order for foster-care placement, but this time the court also ordered plaintiff to cease contact with her daughter and ruled that, if weekend visits with her father were successful, the child would be placed permanently with plaintiff's ex-husband. (*In re Dyandria D.*, No. 02389/97 (N.Y. Fam. Ct. Feb. 20, 2001) (Larabee, J.) (Def. Forestdale Ex. E).)[6] The child eventually returned to her father's custody, and, on June 11, 2001, all charges against plaintiff arising out of the events leading to her arrest on January 23, 2001, were dropped. (Amend. Compl. ¶ 32.)

---

[5] The record does not state whether plaintiff was in prison between January 23 and February 2, 2001, because she was waiting to be released on bond or for some other reason.

[6] In 2003, the Appellate Division affirmed this order. *In re Dyandria D.*, 757 N.Y.S.2d 432 (N.Y. App. Div. 2003) ("In light of appellant's recent kidnapping of her daughter Dyandria, in connection with which appellant declared her intention not to return the child, and of appellant's unremitting efforts to publicize this matter by disseminating materials featuring the child, in violation of prior court orders, Family Court's decision to continue the suspension of appellant's visitation and to grant an order of protection against appellant was proper.").

Although subsequent developments in the family court case are not before the Court, they are unusual enough to warrant mention. In April of 2002, plaintiff filed a complaint in the Southern District of New York, alleging that the City of New York had eliminated her visitation rights to her daughter on January 23, 2001, in retaliation for the exercise of her First Amendment rights, including an interview with a local newspaper regarding her family court case, her production of a public access cable television show, in which she publicized her case, and her "attendance at street fairs and protests." (Complaint ¶ 5, *Murray v. City of New York*, No. 02 Civ. 2483 (Feb. 28, 2002) (Def. Ex. K).) The case was dismissed without prejudice following a stipulation of the parties. (Def. Ex. L.) Later in 2002, the Family Court found plaintiff in violation of various protective orders for "posting flyers denigrating the foster care agency[,] harassing the father on three separate occasions by reporting him to various authorities, and harassing him by posting flyers in his neighborhood[, and] committing aggravated harassment on at least five occasions by broadcasting images of the child." *See Matter of Dyandria D. v. Dyandria M.*, 802 N.Y.S.2d 152 (N.Y. App. Div. 2005). As a result, the Family Court sentenced plaintiff to three years in prison for civil contempt. *Id.* Plaintiff served twenty-eight months before she was released in February of 2005. (Opp'n Ex. 13, at 30.)

Plaintiff filed the Complaint in the instant case on February 26, 2004. Because the Complaint contained only a skeletal account of her arrest and no facts connecting the various defendants to her claims, by order dated January 13, 2005, the Court[7] directed plaintiff to file an amended complaint and, further, instructed plaintiff as to the various elements of each of her claims. Plaintiff filed the amended complaint on March 8, 2005.

---

[7] Judge Mukasey was assigned to plaintiff's case at that time. The case was transferred to this Court on March 24, 2005.

## DISCUSSION

1. **Legal Standard**

"In deciding a Rule 12(c) motion, [courts] apply the same standard as [is] applicable to a motion under Rule 12(b)(6), accepting the allegations contained in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party." *Ziemba v. Wezner*, 366 F.3d 161, 163 (2d Cir. 2004) (citation and quotation marks omitted). Accordingly, a complaint should not be dismissed under Rule 12(c) unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957). In other words, "the issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). Additionally, a court deciding a Rule 12(c) motion, like a court deciding a Rule 12(b)(6) motion, may consider all papers and exhibits appended to the complaint as well as any matters of which judicial notice may be taken. *See Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1092 (2d Cir. 1995). Specifically, a court may take judicial notice of documents filed in other courts, state and federal, "not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991).

**2. Analysis**

In her Amended Complaint, plaintiff alleges that her arrest on January 23, 2001, and imprisonment until February 2, 2001,were in violation of the Fourth Amendment and

state law.[8] Plaintiff further alleges that by arresting her and returning her daughter to foster care, defendants interfered with her right to maintain "parental care, custody, and control over plaintiff's daughter" in violation of the Fifth Amendment and state law.[9] The Court construes this state law claim as the tort of interference with a custodial relationship with a child. *See Sager v. Rochester Gen. Hosp.*, 647 N.Y.S.2d 408, 410 (N.Y. Sup. Ct. 1996) (describing this tort).

Defendants argue that all of plaintiff's claims are time-barred. Claims brought pursuant to 42 U.S.C. § 1983 are governed by the limitations period for personal injury suits under the laws of the state where the cause of action arises. *See Wilson v. Garcia*, 471 U.S. 261, 266 (1985). The applicable statute of limitations in New York is three years. *See, e.g.*, *Veal v. Geraci*, 23 F.3d 722, 724 (2d Cir. 1994); *Singleton v. City of New York*, 632 F.2d 185, 189 (2d Cir. 1980). Here, plaintiff was arrested on January 23, 2001, and held in prison until February 2, 2001, so plaintiff's claims under § 1983 for false arrest, false imprisonment, and interference with plaintiff's parental rights were untimely when she filed the initial Complaint on February 26, 2004. As to plaintiff's state law claims, a one-year limitations period governs plaintiff's state law claims for false arrest, false imprisonment, and malicious prosecution, *see* N.Y.C.P.L.R. § 215(3), so these

[8] In addition to stating claims for false arrest and imprisonment under New York tort law, plaintiff also brings a claim under New York Civil Rights Law Article 2, Section 2, which states, "No authority can, on any pretense whatsoever, be exercised over the citizens of this state, but such as is or shall be derived from and granted by the people of this state."

[9] In its January 13, 2005 Order, this Court indicated to plaintiff that if she wished to pursue her claim against an agency of the City of New York, she must bring the action against the City of New York, as agencies themselves do not have the capacity to be sued under the New York City Charter. (City Mot. Ex. M, at 5.) Heedless of this advice, plaintiff has once again named ACS and the NYPD as defendants in her Amended Complaint. The Court will nevertheless construe plaintiff's claims to have been brought against the City for purposes of this Opinion.

claims are time-barred as well. Because New York does not provide a specific tolling provision for the tort of custodial interference, the three-year statute of limitations for actions to recover for personal injury applies, *see* N.Y. Civ. Pract. Law § 214(5), and thus this claim is untimely as well.[10] *See Tinker v. Abrams*, 640 F. Supp. 229, 234 (S.D.N.Y. 1986) (applying three-year statute of limitations to the claim of custodial interference).

The only claim brought by plaintiff that is not time-barred is her claim under § 1983 for malicious prosecution in violation of the Fourth Amendment. Under federal law, a claim of malicious prosecution accrues when the underlying criminal proceedings are conclusively terminated. *See Murphy v. Lynn*, 53 F.3d 547, 548 (2d Cir. 1995) ("It is clear from our precedents that the applicable statute of limitations for § 1983 actions in New York is three years, and that, for claims based in malicious prosecution, this period starts to run only when the underlying criminal action is conclusively terminated." (internal citation omitted)). Here, the underlying criminal proceedings against plaintiff for custodial interference and unlawful imprisonment was terminated on June 11, 2001, less than three years before the filing of this action, and thus within the three-year statute of limitations period for § 1983 claims.

Nevertheless, plaintiff's claim for malicious prosecution fails. Despite the fact that this Court advised plaintiff that she must identify in her Amended Complaint a municipal practice or policy that was the "moving force [behind] the constitutional violation," *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978), plaintiff has not

[10] In addition, the claims of false arrest, false imprisonment, malicious prosecution, and interference with a custodial relationship are time-barred as to City defendants pursuant to New York's General Municipal Law, which requires a plaintiff asserting tort claims against a municipal entity to file a notice of claim within ninety days, and to file suit within one year and ninety days. *See* N.Y. Gen. Mun. Law §§ 50e, 50i.

done so. The practice that plaintiff attempts to fit within the parameters of *Monell*'s holding is ACS's "policy of harassing and treating parents more harshly if those parents telecast issues critical [of] ACS." (Amend. Compl. ¶ 52.) The Amended Complaint states no facts to support this policy; indeed, the Amended Complaint does not describe plaintiff's criticism of ACS, nor does it allege that the actions described in the Complaint were taken by defendants in response to that criticism. Even if the complaint included an account of these events, however, the claim for malicious prosecution would fail because "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." *City of Oklahoma v. Tuttle*, 471 U.S. 808, 823–24 (1985).[11] The Amended Complaint does not allege other similar instances of malicious prosecution that could raise an inference that the City maintains a policy or custom of deliberate indifference to these types of unconstitutional deprivations. *See Miro v. City of New York*, No. 05 Civ. 10570 (DAB), 2007 U.S. Dist. LEXIS 15412, 2007 WL 549418, at *4 (S.D.N.Y. Feb. 21, 2007).

3. **<u>Sanctions</u>**

Finally, City defendants have requested that the Court impose costs on plaintiff and enter an order enjoining plaintiff from filing any more suits in the Second Circuit related to Family Court proceedings or removal of her daughter without first obtaining leave of court.

---

[11] Had plaintiff's other § 1983 claims not been time-barred, they would have failed for this same reason.

Defendants' first argument in favor of sanctions is that plaintiff has a history of abusing the judicial process. Defendants cite the order issued by the Family Court in which plaintiff was said to have "repeatedly demonstrated her flagrant disregard for the court system, its findings, and orders." *See In re D.D.*, No. 02389/97E, 2002 N.Y. Misc. LEXIS 1595, 2002 WL 31844687, at *3 (N.Y. Fam. Ct. Oct. 4, 2002) (Sturm, J.). In addition, this is plaintiff's fourth federal case related to her Family Court proceeding. The Court notes, however, that Judge Sturm's comment was made after plaintiff's violation of the protective orders against her, a situation different from the present one, and that the present case states different claims than those brought in her previous three federal cases. Moreover, as described above, the case in which plaintiff alleged violations of her First Amendment rights was withdrawn by stipulation, and her second habeas case was never found to be frivolous, but instead was mooted by plaintiff's release from prison in February of 2005.

More serious, however, are defendants' allegations that plaintiff lied to the Court by omitting any mention in her Complaint of the temporary extension of the custody order that was in place when plaintiff took her daughter out of foster care. The Amended Complaint states, "The order extending placement in foster care expired on December 13, 2000." (Amend. Compl. ¶ 10; *see also id*. ¶¶ 11–13.) The Amended Complaint also states that the NYPD obtained an order for her arrest, "*knowing* that the orders of protection and foster placement had expired," because plaintiff had "informed" defendants "well before the appearance . . . that plaintiff had broken no law in resuming custody of plaintiff's daughter." (*Id.* ¶¶ 24–25.) As noted above, plaintiff argues in her opposition that she believes that the order extending the placement was unlawful.

Nevertheless, plaintiff was under an obligation to accurately describe the events surrounding the allegations made in the Amended Complaint. Plaintiff failed to fulfill that obligation by representing to the Court that the placement order had "expired" when she knew at the time that she filed the Complaint that the placement order never did expire.

In considering whether to impose sanctions, "the court may consider the 'special circumstances of litigants who are untutored in the law.'" *Simpson v. Putnam County Nat'l Bank of Carmel*, 112 F. Supp. 2d 284, 292 (S.D.N.Y. 2000) (quoting *Maduakolam v. Columbia Univ.*, 866 F.2d 53, 56 (2d Cir. 1989)). The court may also consider "whether the litigant has been warned of the possible imposition of sanctions." *Daniel v. Safir*, 135 F. Supp. 2d 367, 379 (E.D.N.Y. 2001). Here, plaintiff has not previously been warned of the possible imposition of sanctions. Accordingly, the Court declines in this case to impose sanctions. Nevertheless, plaintiff should consider herself so warned: Like all litigants, plaintiff has an obligation under Rule 11 of the Federal Rules of Civil Procedure to present facts fairly and truthfully and to refrain from filing lawsuits "for any improper purpose, such as to harass" or retaliate against the various individuals who participated in her Family Court case. Fed. R. Civ. Pro. 11(b)(1). Her failure to satisfy her Rule 11 obligations in the future will be grounds for sanctions.

## CONCLUSION

For the reasons set forth above, the Court grants defendants' motions [20, 30] for judgment on the pleadings. The Clerk of the Court is directed to close the case.

SO ORDERED.

Dated: New York, New York
March 12, 2007

Richard J. Holwell
United States District Judge